# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LESSIE GILL DANDRIDGE, as the Special Administrator of the Estate of Jerome Gill, deceased, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No.: 12-cv-5458<br>) |
| COOK COUNTY, ET AL., | ) Judge Robert M. Dow, Jr.<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' motions to dismiss Plaintiff Lessie Gill Dandridge's complaint [21, 22]. For the reasons set forth below, the Court grants the individual Defendants' motions to dismiss [21] and grants in part Defendant Cook County's motion to dismiss [22]. This case remains pending as to Defendant Dart and as to Cook County on an indemnification basis only.

## I.  Background[1]

Plaintiff's amended complaint alleges that on July 15, 2010, Plaintiff's decedent, Jerome Gill, was arrested near his home at 1730 West 1st Avenue in Melrose Park, Illinois. Plaintiff maintains that during Jerome Gill's arrest, Defendant Officers used excessive force against him or failed to intervene to prevent the excessive force. The complaint further alleges that Jerome Gill passed away on the same day as a result of the use of excessive force.

---

[1] For purposes of Defendants' motions to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

On January 6, 2011, Mark Smolens, one of Plaintiff's attorneys of record in this case, submitted a request to the Cook County Sheriff's Office pursuant to the Illinois Freedom of Information Act ("FOIA") for documents concerning the arrest of Mr. Gill. On January 12, 2011, a representative of the Cook County Sheriff's Police Department ("CCSPD") sent a letter to Mr. Smolens stating, "After making a thorough and diligent search of our records I find no records relating to attached incident." Plaintiff claims that after her attorneys received his response, they no longer believed that the CCSPD was involved in Mr. Gill's arrest. Subsequent to Plaintiff's FOIA request, Plaintiff's counsel submitted a FOIA request to the Melrose Park Police Department, obtained Mr. Gill's medical examiner's report and medical records, and interviewed people in the area. Then, on June 30, 2012, another one of Plaintiff's attorneys faxed a FOIA request to the CCSPD. On July 10, 2012, the CCSPD sent a letter to Plaintiff's counsel informing her that documents regarding the undercover drug investigation of Mr. Gill could not be disclosed pursuant to several exemptions under FOIA.

On July 11, 2012, Plaintiff Lessie Gill Dandridge filed a complaint against Thomas Dart, the Cook County Sheriff's Police Department, the Melrose Park Police Department, and unknown officers. Defendant Melrose Park Police Department moved to dismiss. On August 29, 2012, seven weeks after Plaintiff filed her initial complaint, the Court ordered defense counsel to provide documents to Plaintiff to identify the unknown officers. The Court gave Plaintiff leave to file an amended complaint on or before October 25, 2012, and struck without prejudice Defendant Melrose Park Police Department's motion to dismiss. On October 24, 2012, Plaintiff filed a two-count amended complaint against Cook County, Thomas Dart, Terrance Ross, Roy Jones, Salvatore Marra, Leon Ugarte, Mizell Walls, Sgt. Gary Newsom, Kimberly Brown, Gary Contreras, and Craig Wilk. Count I of the complaint alleges a 42 U.S.C. § 1983

claim for excessive force and Count II alleges a *Monell* claim under 42 U.S.C.§ 1983 against Cook County and Defendant Dart for failing to train and discipline Sheriff's employees to prevent the use of excessive force or for failing to respond properly to the FOIA request by Plaintiff's attorney. Defendant Cook County has moved to dismiss, and Defendants Terrance Ross, Roy Jones, Salvatore Marra, Leon Ugarte, Mizell Walls, Sgt. Gary Newsom, Kimberly Brown, Gary Contreras, and Craig Wilk separately have moved to dismiss. Sheriff Dart has not moved to dismiss the claims asserted against him.

**II.     Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed.R.Civ.P. 8(a)(2)), such that the defendant is given "fair notice of the way the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed 2d 80 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

3

**III.    Analysis of Individual Defendants' Motion to Dismiss**

Individual Defendants seek dismissal of Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff's claims are time-barred as a matter of law.  The Seventh Circuit recently has been very clear in its assessment of the limitations periods: "[O]n the subject of the statute of limitations * * * * [w]hat a complaint must plead is enough to show that the claim for relief is plausible.  Complaints need not anticipate defenses and attempt to defeat them.  The period of limitations is an affirmative defense * * * * We have held many times that, because complaints need not anticipate defenses, Rule 12(b)(6) is not designed for motions under Rule 8(c)(1)."  *Richards v. Mitcheff*, 696 F.3d 635, 637-38 (7th Cir. 2012) (internal citations omitted); see also *United States Gypsum Co. v. Indiana Gas Co.,* 350 F.3d 623 (7th Cir. 2003); *United States v. Northern Trust Co.,* 372 F.3d 886 (7th Cir. 2004); *Xechem, Inc. v. Bristol—Myers Squibb Co.,* 372 F.3d 899 (7th Cir. 2004).  In *Mitcheff*, the Court concluded by reminding judges to "respect the norm that complaints need not anticipate or meet potential affirmative defenses."

Despite these admonitions, the Seventh Circuit also has consistently reaffirmed that a plaintiff may plead himself out of court by alleging facts that are sufficient to establish a statute-of-limitations defense.  See *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 675 (7th Cir. 2009) (dismissal is appropriate where it is "clear from the face of the amended complaint that it [was] hopelessly time-barred"); *Andonissamy v. Hewlett–Packard Co.,* 547 F.3d 841, 847 (7th Cir. 2008) (stating that "[a] statute of limitations defense, while not normally part of a motion under Rule 12(b)(6), is appropriate where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations") (internal quotations

4

omitted); *U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.2d 623, 626 (7th Cir. 2003) ("A litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense"); *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)."); see also *Baldwin v. Metro. Water Reclamation Dist. Of Greater Chicago*, 2012 WL 5278614, at *1 ("A plaintiff whose allegations show that there is an airtight defense has pleaded himself out of court, and the judge may dismiss the suit on the pleadings * * * .") (quoting *Mitcheff*, 696 F.3d at 637). In the present case, Plaintiff has pled facts necessary to raise a statute of limitations inquiry, leaving the Court to consider whether Plaintiff's claims are time barred. Where a plaintiff has pled facts which arguably establish an affirmative defense and both sides have briefed the issue, practical considerations—such as discovery costs, attorneys' fees, and judicial efficiency—provide courts with ample reasons to resolve a dispositive point of law early in a case, whether the parties have briefed the question as a 12(b)(6) or a 12(c) issue. In either case, a court's decision rests on the pleadings and whether a plaintiff has affirmatively pled herself out of court.

The length of the limitations period for a § 1983 action is determined by reference to state law personal injury torts. *Owens v. Okure*, 488 U.S. 235, 240-41, 249-50 (1989) (quoting and clarifying *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)). In Illinois, the pertinent limitations provision requires a would-be plaintiff to bring suit within two years of a cause of action's accrual. 735 ILCS 5/13-202; *Jenkins v. Vill. of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007). The limitations clock on an action brought pursuant to § 1983 for excessive force begins to run at the time the that claimant was arrested or injured. See *Washington v. Summerville*, 127 F.3d

552, 556 (7th Cir. 1997) ("the statute of limitations on [plaintiff's false arrest and excessive force] claims began to run when he knew or should have known that his constitutional rights had been violated—the date of his arrest"); *Hudson v. Cassidy*, 2006 WL 3524420, at *3 (N.D. Ill. Dec. 5, 2006) (excessive force is immediately felt and an excessive force claim accrues immediately). For Plaintiff, that means that the limitations period began to run on or about July 15, 2010. In Defendants' estimation, Plaintiff pled herself out of court as to her claims against the individual officers by including certain calendarial facts in her amended complaint: Plaintiff was arrested on July 15, 2010; Plaintiff filed her initial complaint, with the assistance of counsel, on July 11, 2010, asserting claims against Thomas Dart, the Cook County Sheriff's Police Department, the Melrose Park Police Department, and unknown officers; and Plaintiff filed her amended complaint, naming the individual officers and dropping Melrose Park Police Department, on October 24, 2012.

Plaintiff did not name the individual officers as parties to this case until she filed her amended complaint on October 24, 2012. Amended suits, which add new parties after the two-year period, are untimely and will be dismissed unless relation back applies or the running of the statute of limitations is tolled. See, *e.g.*, *Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548, 561-2 (7th Cir. 1996). Thus, Plaintiff's claims against the individual officers survive only if the filing of the amended complaint relates back to the filing of the original complaint under Federal Rule of Civil Procedure 15(c) or equitable principles apply.

  *1.  Relation back*

The Seventh Circuit has long interpreted the third prong of Rule 15(c)(1) "to permit an amendment to relate back to the original complaint only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of

the mistake." *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000) (internal quotation marks omitted) (citing *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998)); *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993); *Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir. 1980)). The Seventh Circuit has "repeatedly reiterated that 'relation back' on grounds of 'mistake concerning the identity of the proper party' does not apply where the plaintiff simply lacks knowledge of the proper defendant." *Hall v. Norfolk Southern Ry. Co*, 469 F.3d 590, 595 (7th Cir. 2006); see also *Baskin*, 138 F.3d at 704. The court of appeals has emphasized that Rule 15(c)(1) contains a "mistake" requirement that is independent from the determination of whether the new party knew that the action would be brought against it. *King*, 201 F.3d at 914 (citing *Baskin*, 138 F.3d at 704; *Worthington*, 8 F.3d at 1257; *Wood*, 618 F.2d at 1230). In fact, "in the absence of a mistake in the identification of the proper party, it is irrelevant for purposes of [Rule 15(c)(1)] whether or not the purported substitute party knew or should have known that the action would have been brought against him." *Baskin*, 138 F.3d at 704 (citing *Wood*, 618 F.2d at 1230).

A plaintiff has the burden of determining who is liable for her injuries and of doing so before the statute of limitations runs out. *Hall*, 496 F.3d at 596; see also *Gavin v. AT&T Corp.*, 2008 WL 400697, at *13 (N.D. Ill. February 12, 2008). As summed up by the Seventh Circuit:

> Whether a plaintiff names a fictitious defendant like "John Doe" because he does not know who harmed him or names an actual – but nonliable – [ ] company because he does not know which of two companies is responsible for his injuries, he has not made a "mistake" concerning "identity" within the meaning of [Rule 15(c)(1)]. He simply lacks knowledge of the proper party to sue. It is the plaintiff's responsibility to determine the proper party to sue and to do so before the statute of limitations expires. A plaintiff's ignorance or misunderstanding about who is liable for his injury is not a "mistake" as to the defendant's "identity."

*Hall*, 496 F.3d at 596.

In the present case, as in *Hall*, Plaintiff filed her original complaint almost two years after the event giving rise to her claims occurred. Plaintiff's failure to determine the names of the officers who might be liable suggests lack of knowledge of the proper defendants, rather than a mistake in identity, at least as those concepts are understood in this circuit's case law. As the court emphasized in *Hall*, for at least a quarter of a century, the Seventh Circuit consistently has upheld a "narrower" view of what constitutes a Rule 15(c) "mistake." 496 F.3d at 596. Under that construction of Rule 15(c), it is the plaintiff's burden to identify the proper party within the applicable limitations period, and there is no recourse under the relation back doctrine if the plaintiff's "mistake" amounts to a lack of knowledge of the proper party at the time the complaint is filed and the plaintiff does not seek leave to amend the complaint to remedy that "mistake" until after the expiration of the limitations period. See *Jackson v. Kotter*, 541 F.3d 688, 696 (7th Cir. 2008) ("[a] plaintiff cannot, after the statute of limitations period, name as defendants individuals that were unidentified at the time of the original pleading. Not knowing a defendant's name is not a mistake under Rule 15."). Here, Plaintiff did not make a mistake regarding the identity of the individual officers within the meaning of Rule 15(c)(1). She simply did not know the names of the individual officers.

Plaintiff incorrectly states that the mistake requirement is irrelevant post-*Krupski v. Costa Cruciere S. p. A.,* ⎯⎯ U.S. ⎯⎯, 130 S. Ct. 2485 (2010). In fact, the Seventh Circuit jurisprudence concerning Rule 15(c)(1) is consistent with the Supreme Court's recent decision in *Krupski*. See, e.g., *Pierce v. City of Chicago*, 2010 WL 4636676, at *3; see also *Wilkins-Jones v. County of Alameda*, 2012 WL 3116025, at *16 (N.D. Cal. July 31, 2012) ("[S]ubsequent cases construing *Krupski* have confirmed that *Krupski* did not eliminate all inquiries into whether the plaintiff in fact committed a mistake; rather, it simply focused on the standard for the

defendants' knowledge of said mistake, assuming such a mistake had occurred.") (collecting post-*Krupski* cases). In *Krupski,* the plaintiff filed a lawsuit seeking compensation for injuries she incurred on a cruise ship. 130 S. Ct. at 2490. The plaintiff's complaint named as defendant Costa Cruise, identifying that entity as the company that "owned, operated, managed, supervised, and controlled" the cruise ship. *Id.* at 2496. In fact, Costa Cruise was merely the marketing and sales agent of the actual carrier and operator of the ship, Costa Crociere. *Id.* at 2491. Although the plaintiff was aware of the existence of Costa Crociere, she did not learn that Costa Crociere was the proper defendant until after the statute of limitations had expired. *Id.* The plaintiff then amended her complaint to substitute Costa Crociere for Costa Cruise as the named defendant. *Id.* The district court dismissed the claim against Costa Crociere on the ground that it failed to satisfy the 15(c)(1) relation-back requirements and thus was time-barred, and the Eleventh Circuit affirmed. *Id.* at 2491–92.

Reversing the lower courts' rulings, the Supreme Court in *Krupski* held that the plaintiff's amended complaint related back because (1) it was evident on the face of the original complaint that the plaintiff had erred in naming Costa Cruise instead of Costa Crociere based on her misunderstanding of the two entities, and (2) Costa Crociere knew or should have known that it would have been named as a defendant but for the plaintiff's error. 130 S. Ct. at 2493. The Court ruled that determination of whether there has been a mistake in the first instance turns not on lack of knowledge of a party's existence, but rather on whether there was an erroneous belief or misunderstanding as to the proper party. *Id.* at 2494. "[A] plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression." *Id.* The Court reasoned that the plaintiff had made a

9

mistake in identifying the proper defendant in her original complaint because she misunderstood critical facts about the two companies' identities and relationship to one another. *Id.* at 2497–98. Further, the Court held that because Costa Cruise and Costa Crociere were related entities with similar names, Costa Crociere should have anticipated that mistake and known that the suit could be brought against it. *Id.* The Court therefore determined that the amended complaint satisfied the relation-back requirements of Rule 15(c)(1). *Id.* at 2498.

Here, Plaintiff filed her original complaint almost two years after the events giving rise to the complaint occurred and immediately before the statute of limitations was set to run on certain claims. She did not make the type of mistake of fact at issue in *Krupski,* in which the Court found that the plaintiff "conflated two possible defendants because of an error in her understanding of their roles in the case and relationship to one another." *Krupski,* 130 S. Ct. at 2497–98. In this case, the only reason that Plaintiff did not name the individual officers in the original complaint was Plaintiff's lack of knowledge about their names, not a mistake concerning their identity. See also *Fleece v. Volvo Construction Equipment Korea, Ltd.*, 2012 WL 171329, at *4 (N.D. Ill. Jan. 20, 2012) (collecting cases) ("Following *Krupski*, numerous lower courts have held that *Krupski* precludes relation back when a plaintiff made an affirmative choice not to discover the identity of the new defendant"); *Demouchette v. Sheriff of Cook County*, 2011 WL 1378712, at *2 (N.D. Ill. Apr. 12, 2011). Relation back would be improper in this case.

### 2. *Equitable principles*

"Equitable estoppel prevents a party from asserting the expiration of the statute of limitations as a defense when that party's improper conduct has induced the other into failing to file within the statutory period." *Ashafa v. City of Chicago,* 146 F.3d 459, 462 (7th Cir. 1998). Federal estoppel law "focuses on whether the defendant acted *affirmatively* to stop or delay the

plaintiff from bringing suit within the limitations period" (*id.* (quoting *Smith,* 951 F.2d at 841) (emphasis in original)), and "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time." *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 451 (7th Cir. 1990). To invoke equitable estoppel, "a plaintiff must show not only misconduct by the defendants, but also that he actually and reasonably relied on the misconduct." *Ashafa,* 146 F.3d at 463. Once the circumstance giving rise to the estoppel is removed, the plaintiff must file suit. See *Shropshear v. Corp. Counsel of City of Chicago,* 275 F.3d 593, 597–98 (7th Cir. 2001).

Somewhat distinct from equitable estoppel, when a limitations period is equitably tolled, the statute of limitations ceases to run for a period of time. See, *e.g.*, *IPF Recovery Co. v. Ill. Ins. Gaur. Fund*, 826 N.E.2d 943, 947-48 & n.5 (Ill. App. Ct. 2005) ("equitable tolling is an exception to the general rule that a statute of limitations is not tolled absent authorization from a statute"). Although the accrual analysis in a § 1983 case is governed by federal law, the tolling analysis is governed by state law. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006); *Shropshear v. Corp. Counsel of the City of Chicago*, 275 F.3d 593, 596 (7th Cir. 2001). The Seventh Circuit has stated that equitable tolling "permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before, even though the defendant took no active steps to prevent him from suing." *Singletary v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago,* 9 F.3d 1236, 1241 (7th Cir. 1993). Illinois Supreme Court precedent holds that "[e]quitable tolling * * * may be appropriate if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way." *Clay v. Kuhl,* 727 N.E.2d 217, 223 (Ill. 2000); *Ciers v. O.L. Schmidt Barge Lines, Inc.*, 675 N.E.2d 210, 214 (Ill. App. Ct. 1996) ("Equitable tolling may be appropriate if defendant has actively misled plaintiff; plaintiff 'in some

11

extraordinary way' has been prevented from asserting his rights; or plaintiff has timely asserted his rights mistakenly in the wrong forum.").[2]

Plaintiff maintains that her pre-suit FOIA requests were thwarted by CCSPD and thus equitable estoppel prevents Defendants from asserting a statute of limitations defense. But Plaintiff's argument starts with the faulty premise that FOIA is a discovery tool. Instead, "FOIA's purpose is to ensure an informed citizenry, not to serve as a discovery tool" for plaintiffs or potential plaintiffs. *Hawkins v. DEA*, 347 Fed. Appx. 223, at *4-5 (7th Cir. Aug. 18, 2009); *Fazzini v. U.S. Dep't of Justice*, 1991 WL 74649, at *3 (N.D. Ill. May 2, 1991) (citing *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)) ("The basic purpose of FOIA is to ensure an informed citizenry, to check against corruption and to hold the government accountable. However, FOIA was not intended to function as a private discovery tool."). Moreover, pursuant to FOIA exemptions, it is not improper for a police department to withhold the names of officers involved in undercover drug investigations. See 5 ILCS 140/(1)(d)(vi) and (1)(b) (exemptions for private information and disclosure that would endanger the life or physical safety of law enforcement personnel or any other person). Plaintiff's counsel decision to use FOIA, rather than to file a suit or use multiple other available avenues (described below) to identify the proper defendants, is not the fault of Defendants. See, *e.g., Fletcher v. Michigan Dept. of Corrections*, 2010 WL 2376167, at *8 (E.D. Mich. June 9, 2010) (rejecting plaintiff's

---

[2] As noted by the Seventh Circuit and district courts, the Illinois Supreme Court's "position appears to conflate the doctrines of equitable tolling and equitable estoppel." *Richards v. Burgett, Inc.,* 2011 WL 6156838, at *5 (N.D. Ill. Dec. 12, 2011) (citing *Hollander v. Brown,* 457 F.3d 688, 694 n. 3 (7th Cir.2006) ("Illinois cases appear, at times, to use 'equitable estoppel' interchangeably with the related principle of equitable tolling")); *Fidelity Nat'l Title Ins. Co. of N.Y. v. Howard Sav. Bank,* 436 F.3d 836, 839 (7th Cir. 2006) ("The Illinois cases that mention the term [equitable tolling] seem to mean by it equitable estoppel"). Whether the Illinois Supreme Court would recognize a distinction between equitable tolling and equitable estoppel remains unresolved. See *Hollander,* 457 F.3d at 694 n. 3; *Fidelity Nat'l Title Ins. Co. of N.Y.,* 436 F.3d at 839. In any event, Illinois courts teach that equitable tolling "must be applied with caution." *Clay,* 727 N.E.2d at 223.

equitable argument that defendants fraudulently concealed the identity of "Joe Does" when it did not locate any records in response to plaintiff's counsel's multiple FOIA requests).

In *Hines v. City of Chicago*, the Seventh Circuit addressed an almost identical scenario and concluded that the plaintiffs' claims against the individual officers were time barred:

> The doctrine of equitable tolling allows a plaintiff to file a claim after the statute of limitations has expired, but only if she was unable to do so earlier despite the exercise of "reasonable diligence." *See Wilson v. Battles,* 302 F.3d 745, 748 (7th Cir. 2002); *Singletary v. Cont'l Ill. Nat'l Bank and Trust Co. of Chicago,* 9 F.3d 1236, 1242 (7th Cir. 1993). To show that they diligently tried to find out the names of the officers, the plaintiffs in this case point to a series of requests they made to officials in the Chicago Police Department between December 2000 and July 2001. The officials were unresponsive, either ignoring the plaintiffs' letters, referring them to other department officials, or refusing outright to provide the information. The plaintiffs finally got the information not from the police department but from the City's corporation counsel, in response to a subpoena issued in July 2002. They added the officers' names to the complaint soon thereafter.
>
> The district court dismissed the claim against the officers, concluding that the plaintiffs had not been reasonably diligent. We agree. The method that finally uncovered the officers' names—the use of discovery after the filing of the lawsuit—was available to the plaintiffs long before the statute of limitations expired. See *Donald v. Cook County Sheriff's Dep't,* 95 F.3d 548, 555 & n. 3 (7th Cir. 1996) (discussing the use of discovery to identify unknown defendants) * * *. [Plaintiffs] have not explained why they failed to take advantage of discovery until July 2002.
>
> Instead, the plaintiffs argue that the City's failure to respond to their earlier requests, and its failure to identify the officers in its answer to the original complaint, should estop it from raising the statute-of-limitations defense on behalf of the officers. We addressed an almost identical argument in *Ashafa v. City of Chicago,* 146 F.3d 459 (7th Cir. 1998). As here, the plaintiff in *Ashafa* wished to bring a § 1983 claim against unknown police officers, but was unable to get the police department to release their names. In rejecting Ashafa's equitable-estoppel argument, we noted that the doctrine "requires that a defendant take active steps" to delay or prevent the filing of a suit, "such as destruction of evidence or promises not to plead the statute of limitations as a defense," *id.* at 462. The plaintiff must also show "that he actually and reasonably relied on the [defendant's] misconduct," *id.* at 463. In this case, the City did nothing more than refuse to release the officers' names. We do not see how this can have induced the plaintiffs to delay filing their suit; if anything, it put the plaintiffs on notice

> that they needed to file suit promptly in order to obtain the names through discovery.
>
> The plaintiffs failed to take timely advantage of available discovery procedures to find out the names of the police officers. And although the City did not fully cooperate with the plaintiffs' other investigative efforts, it did not take any active dissuasive steps on which the plaintiffs can be said to have relied.

*Hines v. City of Chicago*, 91 Fed. Appx. 501, 502-03 (7th Cir. 2004); see also *Ashafa v. City of Chicago*, 146 F.3d 459, 462 (7th Cir. 1998) (affirming 12(b)(6) dismissal of §1983 claims, even though the city refused to provide plaintiff with the names of officers). Here, Plaintiff's attorneys should not have relied predominantly on a FOIA request to obtain information as to the names of undercover officers involved in a drug bust. Plaintiff had the foresight to retain at least one attorney as early as January 2011, and that attorney knew as early as January 2011 that, according to Jerome Gill's medical examiner's report, Gill was arrested during a CCSPD undercover drug investigation. When Plaintiff was unable to obtain the officers names through FOIA, witness interviews, and medical reports, it was incumbent upon counsel to take further action to identify the offending officers.

Plaintiff's attorneys' inaction is even more troublesome because Plaintiff's attorneys waited 17 months to take any action after the first FOIA request proved unfruitful. Even if Defendants had improperly withheld the names of the individual officers requested under FOIA (they did not), Plaintiff's subsequent, lengthy inaction cannot be equated with "reasonable reliance." See *Ashafa*, 146 F.3d at 463 (rejecting equitable estoppel claim even though the City of Chicago allegedly refused to provide the names of officers where plaintiff did not allege any instances in which the City represented that it was going to disclose the names of the officers to plaintiff); *Foryoh v. Hannah-Porter*, 428 F. Supp. 2d 816, 823 (N.D. Ill. 2006) (noting that "nothing in the pleadings or in the realm of reasonable inferences suggests that the putative

Defendant * * * ever told or suggested to Mr. Foryoh that he was free to delay filing a federal civil rights lawsuit against her and that she would not invoke the otherwise applicable statute of limitations that would provide her with a complete defense under the law"). Plaintiff's counsel waited until 13 days before the statute of limitations expired to take any action after the first FOIA request. On top of the delay, the decision to submit a second FOIA request at the eleventh hour, even though the first FOIA request was unsuccessful, in lieu of proceeding with several other options, is perplexing. Plaintiff could have filed the lawsuit and named an official, such as Sheriff Dart, in order to conduct early discovery to learn the identity of the individual officers. Indeed, she would have had more than enough time (approximately 19 months) to use initial disclosures or discovery requests to obtain the names of the individual officers. Courts in this district routinely allow plaintiffs to name an official, such as Sheriff Dart, for the sole purpose of allowing a plaintiff to conduct early discovery to learn the identity of John Doe defendants.[3] See, *e.g.*, *Donald v. Sheahan*, 95 F.3d 548, 554-55 (7th Cir. 1996) (noting that a supervisory person without actual liability, such as a sheriff, may be named as a defendant so that the plaintiff may conduct discovery to learn the identities of the real defendants); *Billman v. Indiana Dept. of Corrections*, 56 F.3d 785, 790 (7th Cir. 1995); *Hall v. Sheahan*, 2001 WL 111019, at *4 (N.D. Ill. Feb. 2, 2001); *Turner v. Dart*, 2012 WL 5258869, at *2 (N.D. Ill. Oct. 17, 2012). Alternatively, she could have filed a state court lawsuit and used pre-suit discovery tools available pursuant to Illinois Supreme Court Rule 224, which allows pre-suit discovery to determine the identity of a defendant,[4] or Federal Rule of Civil Procedure 27, which allows an

---

[3] Within seven weeks of filling the lawsuit, Plaintiff's counsel had the information necessary to amend the complaint.

[4] Supreme Court Rule 224 states that "[a] person or entity who wishes to engage in discovery for the sole purpose of ascertaining the identity of one who may be responsible in damages may file an independent action for such discovery." ILL. S. Ct. R. 224.

15

individual who anticipates filing a lawsuit but is not ready to do so to depose a witness to perpetuate testimony or evidence. Or, after Plaintiff's attorneys reviewed the medical examiner's report, which identified the CCSPD's undercover drug investigation, Plaintiff's attorneys could have requested a review of their first FOIA request by the Attorney General pursuant to 5 ILCS 140/9.5.

If Illinois courts conflate equitable tolling with equitable estoppel, Plaintiff has failed to show that Defendants played a direct role in preventing her from filing a law suit. If, on the other hand, Illinois courts view equitable tolling as the Seventh Circuit does, then the limitations period also can be tolled against a defendant who did not mislead the plaintiff or take active steps to prevent a plaintiff from suing if the plaintiff faced an extraordinary barrier to asserting her rights in a timely fashion or if through no fault or lack of diligence on her part a plaintiff was unable to sue. Extraordinary barriers include legal disability, an irredeemable lack of information, or situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence. *Thede v. Kapsas,* 897 N.E.2d 345, 351 (Ill. App. Ct. 2008). None of these extraordinary barriers exist in this case, as Plaintiff has pointed only to the CCSPD's conduct as the reason why she could not sue within the statute of limitations. Because the Court has determined that Defendants' conduct does not rise to the level necessary for the application of equitable estoppel, Plaintiff's equitable tolling argument fails for substantially the same reason as her equitable estoppel argument: because Plaintiff's counsel did not exercise "all due diligence" in seeking out the offending officers' names.

As the Seventh Circuit has noted: "[I]gnoring deadlines is the surest way to lose a case. Time limits coordinate and expedite a complex process; they pervade the legal system, starting with the statute of limitations. Extended disregard of time limits (even the non-jurisdictional

16

kind) is ruinous." *Henderson v. Bolanda*, 253 F.3d 928 (7th Cir. 2001) (affirming Rule 12(b)(6) dismissal of §1983 claim against individual officer as untimely). Here, it was not improper for the CCSPD to refuse to disclose the names of the undercover officers pursuant to FOIA exemptions, particularly because courts consistently hold that FOIA is not a discovery tool. Moreover, Plaintiff's counsel always had at their disposal several processes to ferret out the officers' names. Yet instead of using the other avenues available to obtain the names of the individual officers, Plaintiff's attorneys submitted a second FOIA request more than 17 months after the first FOIA request was submitted (and proved to be ineffective) and a mere 13 days before the statute of limitations expired. These circumstances do not warrant equitable tolling or equitable estoppel. See *Hoy v. City of Chicago*, 1994 WL 162640, at *3-4 (N.D. Ill. Apr. 28, 1994) (granting motion to dismiss claims as time barred after plaintiff failed to get necessary information through a FOIA request because plaintiff had "other options available to her to discover the identity of party through discovery which she did not utilize"); *Edwards v. Two Unknown Male Chicago Police Officers*, 623 F. Supp. 2d 940, 952 (N.D. Ill. 2009) (holding that issuing a request for the production of documents within the limitations period is not enough to justify tolling without showing that the plaintiff "undertook any other action following the incident to attempt to ascertain the defendant officers' identities").

### IV. Analysis of Cook County's Motion to Dismiss

Cook County moves to dismiss all claims against, contending that Cook County cannot be held liable for the actions of Cook County Sheriff's officers. Plaintiff states in her response brief that she "concedes that the Cook County cannot be held liable under a theory of respondeat superior" and that "Plaintiff named Cook County as a nominal defendant for purposes of indemnification."

"Illinois law establishes that the Sheriff is an independently elected county officer and is not an employee of the county in which the sheriff serves." *Askew,* 568 F.3d at 636 (citations omitted); *Thomas* 604 F.3d at 305 n. 4 (7th Cir. 2010) ("the Sheriff is an independently-elected officer who is accountable only to the people, rather than the County board") (citing *Thompson v. Duke,* 882 F.2d 1180, 1187 (7th Cir. 1989)). Therefore, Cook County is not vicariously liable for actions taken by the Sheriff or his hired deputies. See *Milestone v. City of Monroe, Wis.,* 665 F.3d 774, 780 (7th Cir. 2011) ("There is no respondeat superior liability under § 1983; the Supreme Court 'distinguish[es] acts of the municipality from acts of employees of the municipality.'") (citation omitted); see also *Franklin v. Zaruba,* 150 F.3d 682, 685–86 n. 4 (7th Cir. 1998) (finding that the county cannot be liable under Section 1983 *Monell* claim for policies of a sheriff, and also explaining that the county has no respondeat superior liability). Additionally, Cook County cannot be held liable under *Monell* because the county lacks the authority to establish any policies regarding the training or performance by the employees of the Sheriff's Office. See *Thompson,* 882 F.2d at 1187 (affirming dismissal of Cook County as a defendant against a *Monell* claim since the County had "no authority to train the employees involved or to set the policies under which they operate"); see also *Ebrahime v. Dart,* 2010 WL 4932655, at *6 (N.D. Ill. Nov. 30, 2010) (dismissing a *Monell* claim against the county "because it is the Sheriff who is the policymaker at the county jail"). Thus, to the extent that Plaintiff alleges substantive claims against Cook County, those claims are dismissed under Rule 12(b)(6). See, *e.g., Otero v. Dart*, 2012 WL 5077727, at *6 (N.D. Ill. Oct. 18, 2012). However, Plaintiff has sued Sheriff Dart in his official capacity and apparently joins Cook County as a party pursuant to *Carver v. Sheriff of LaSalle Cnty.,* 324 F.3d 947, 948 (7th Cir. 2003). Cook County is an indispensable party to this lawsuit because state law requires the county to pay

judgments entered against the Sheriff in his official capacity. See *Carver,* 324 F.3d at 948 ("a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity"); see also *Askew v. Sheriff of Cook Cnty.,* 568 F.3d 632, 636 (7th Cir. 2009). Therefore, as long as Plaintiff's claims remain pending against Sheriff Dart, the Court will not dismiss Cook County from this suit.[5]

**V.     Conclusion**

For the following reasons, the Court grants in part Defendant Cook County's motion to dismiss [22] and grants in its entirety the individual Defendants' motion to dismiss [21]. This case remains pending as to Defendant Dart and as to Cook County on an indemnification basis only.

Dated:  July 8, 2013                                      _____
                                                                        Robert M. Dow, Jr.
                                                                        United States District Judge

---

[5]  To the extent that Cook County contends that the claims against it are time barred because only Sheriff Dart was named in the caption to the original complaint (and not Cook County for indemnification purposes), Cook County's argument is not well taken. This is the exact scenario that the Supreme Court in *Krupski* sought to remedy.

19